# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-2539

_____

United States of America,

*Plaintiff - Appellee*,

v.

Darnell Andre Dunn,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: May 11, 2023
Filed: August 9, 2023

_____

Before SMITH, Chief Judge, COLLOTON and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A jury convicted Darnell Dunn of unlawful possession of a firearm as a felon. *See* 18 U.S.C. § 922(g)(1). The district court[*] determined that Dunn had three prior convictions for a "violent felony," and sentenced him to the statutory minimum

---

[*]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

sentence of 180 months' imprisonment. *See* 18 U.S.C. § 924(e). Dunn asserts error during trial and at sentencing, but we affirm the judgment.

## I.

Dunn was apprehended and charged after a shooting in St. Paul, Minnesota. Early one morning, Brittney Jones left a friend's house to drive home. A dark sport utility vehicle suddenly drove in front of Jones and pulled over to the side of the road. The occupants of the SUV then began to fire a gun at Jones's car.

Jones drove away and fled on foot. She hid in a bush and called the police. Officer Dustin Sweeney responded to the area of the shooting.

Sweeney saw a black SUV driving without headlights. He stopped the vehicle and found three people inside. Dunn was in the front passenger seat and identified himself as "Andre Jones England." Due to a mix-up in communication from the dispatcher, however, Sweeney thought the suspect vehicle bore Nebraska license plates, so he released the SUV carrying Dunn when the plates did not match the description. Sweeney later discovered the mistake, but could not locate information about a person named "Andre Jones England."

The next night, Sweeney was on patrol and entered a gas station in St. Paul. He saw a car parked halfway out of a designated space and blocking traffic. Two men sat in the car; the passenger appeared to be the man from the black SUV who identified himself as "Andre Jones England" the night before.

Sweeney walked to the passenger side of the car and directed the passenger to get out of the vehicle. The occupants initially refused to comply, but the passenger eventually exited the vehicle. A second officer observed that the passenger "was also sliding his bottom along the seat to try to conceal the firearm that he was sitting on."

-2-

The firearm, a .40 caliber semiautomatic handgun, fell to the floor of the car. A crime scene investigator later determined that the firearm was the same gun that fired shots at Jones the night before.

The passenger was identified as Dunn, and the driver was Dunn's cousin, Justin Lindsey. Both were convicted felons. A grand jury charged both men with unlawful possession of a firearm as a felon. *See* 18 U.S.C. § 922(g)(1).

Lindsey pleaded guilty. At his plea hearing, Lindsey testified that he owned the firearm, but did not know that the gun had been used in a shooting on the night before his arrest. Lindsey claimed that he purchased the gun on the morning of his arrest "from a person [he knew] through a person." Lindsey said that Dunn did not know the gun was in the car, and that he "threw the gun to Dunn and told him to put it into the glove compartment" during the encounter with Officer Sweeney.

Lindsey was unavailable to testify at Dunn's trial, but Dunn sought to introduce Lindsey's testimony from the plea hearing to show that he, Dunn, did not knowingly possess a firearm in Lindsey's car. The district court ruled that Lindsey's testimony was inadmissible hearsay and excluded it.

At trial, the government theorized that the shooting at Brittney Jones was a "gang shooting" at which Dunn was present, and cross-examined Dunn about his membership in the Crips street gang. The prosecution suggested that the shooter in the black SUV mistook Jones for a rival gang member, because she was operating a rental car in the early morning hours in the "heart" of gang territory. Dunn denied that he was a member of the Crips, and denied any involvement in the shooting at Jones. The government, however, introduced a post from Dunn's Facebook account in which Dunn identified himself as a Crips gang member.

The jury found Dunn guilty of the firearm charge. At sentencing, the district court determined that Dunn was an armed career criminal under 18 U.S.C. § 924(e), because he had sustained three previous convictions for a violent felony. The court then sentenced Dunn to 180 months' imprisonment.

## II.

### A.

Dunn first argues that the district court erred by excluding testimony from Lindsey's plea hearing that exculpated Dunn. Lindsey invoked his right under the Fifth Amendment to avoid testifying at Dunn's trial, so he was "unavailable" as a witness. *See* Fed. R. Evid. 804(a)(1). Dunn argues that Lindsey's testimony from the plea hearing was admissible under the rules of evidence either as "former testimony" or as a "statement against interest." We review the district court's ruling for abuse of discretion. *United States v. Johnson*, 108 F.3d 919, 922 (8th Cir. 1997).

Rule 804(b)(1) provides that an unavailable witness's testimony from a prior hearing is not excluded by the rule against hearsay if the party against whom the testimony is offered had "an opportunity and similar motive to develop [the testimony] by direct, cross-, or redirect examination." The government's motive at the plea hearing, however, was only to establish a factual basis for Lindsey's guilty plea, and to ensure that the plea that was knowing and voluntary. *See* Fed. R. Crim. P. 11(b). The government had no motive to develop Lindsey's testimony about whether Dunn knowingly possessed the firearm, because Dunn's involvement was immaterial to the validity of Lindsey's guilty plea. *See United States v. Preciado*, 336 F.3d 739, 746 (8th Cir. 2003). The district court correctly declined to admit Lindsey's testimony from his plea hearing under Rule 804(b)(1).

Rule 804(b)(3) provides that a "statement against interest" is not excluded by the rule against hearsay. A statement in a criminal case qualifies as one against interest if (a) a reasonable person would have made the statement only if he believed it to be true, because the statement exposed the person to criminal liability, and (b) the statement is supported by corroborating circumstances that clearly indicate its trustworthiness. Only those portions of a declarant's statement that tend to expose him to criminal liability are admissible under the rule. *Williamson v. United States*, 512 U.S. 594, 599-600 (1994).

The district court explained that once Lindsey decided to plead guilty, Dunn's culpability for possessing a firearm did not affect Lindsey's criminal liability. Lindsey's statements tending to exculpate Dunn were thus not against Lindsey's penal interest. The district court also did not err in concluding that Lindsey's statements about Dunn were neither corroborated nor trustworthy. As the court observed, Lindsey had a "clear motivation to lie to exonerate" his cousin. Lindsey's credibility suffered when he could not identify the person from whom he supposedly purchased the gun on the morning of the arrest: "like I told you, I bought the gun through a person that I knew, through . . . a mutual person that I knew." The district court did not abuse its discretion in declining to admit Lindsey's prior statements under Rule 804(b)(3).

Dunn also contends that the district court should have admitted Lindsey's statements under Federal Rule of Evidence 807, the "residual exception" to the rule against hearsay. The district court did not err, however, in concluding that Lindsey's statements lacked the "sufficient guarantees of trustworthiness" required by the rule. As discussed, Lindsey's statements were not supported by corroborating circumstances indicating their trustworthiness, and there were sound reasons to doubt his credibility. The court properly declined to admit the evidence under Rule 807. *See United States v. Jackson*, 335 F.3d 170, 179 (2d Cir. 2003).

B.

Dunn next contends that the district court abused its discretion in allowing the government to cross-examine Dunn about his membership in the Crips gang. The parties dispute whether Dunn properly objected, but we will assume for sake of analysis that the issue is not forfeited, and thus review for abuse of discretion. Dunn argues that the gang evidence was proof of "other crimes, wrongs, or acts" for which the government was required to provide advance notice. *See* Fed. R. Evid. 404(b)(3).

The district court properly determined that the disputed gang evidence was intrinsic to the crime charged, and thus not governed by Rule 404(b). *See United States v. Battle*, 774 F.3d 504, 511 (8th Cir. 2014). Intrinsic evidence "tends logically to prove any element of the crime charged," and is "admissible as an integral part of the immediate context of the crime charged." *United States v. Jackson*, 913 F.3d 789, 792 (8th Cir. 2019) (internal quotation omitted).

Here, the government was required to prove that Dunn knowingly possessed a firearm. The indictment alleged that Dunn possessed a gun in the car with Lindsey at the time of their arrest. But "[p]rior possession of a firearm is directly relevant to proving later possession of that same weapon because it helps establish ownership or control of the weapon." *Battle*, 774 F.3d at 511. The evidence showed that the gun seized from Lindsey's car was the same firearm fired at Brittney Jones one day earlier. The government's theory was that Dunn or another person in the black SUV with Dunn fired at Jones, and the gang evidence explained why they would have done so. The gang evidence thus tended to make it more likely that Dunn possessed the firearm the night before. Possession of the same gun the night before was relevant to Dunn's knowing possession of the gun in the car with Lindsey. Therefore, the gang evidence was intrinsic to the crime charged and not subject to Rule 404(b).

-6-

The district court also properly declined to exclude the gang evidence under Rule 403 after concluding that the probative value of the evidence was not substantially outweighed by a danger of unfair prejudice. Evidence of Dunn's gang membership was relevant to a disputed issue; its primary effect was not to prejudice Dunn unfairly by showing association with unsavory characters. *See United States v. Gaines*, 859 F.3d 1128, 1131 (8th Cir. 2017). Dunn's knowledge of the gun was a disputed issue at trial, and the court was not required to exclude evidence that bore on that question.

## C.

Dunn also maintains that his conviction under 18 U.S.C. 922(g)(1) is overly broad and violates his constitutional right to keep and bear arms under the Second Amendment. Dunn forfeited this argument in the district court, so we review only for plain error. *United States v. Pirani*, 406 F.3d 543, 549 (8th Cir. 2005) (en banc). Nothing in the Supreme Court's decision recognizing an individual right to keep and bear arms "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). Following *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2122 (2022), this court concluded that the felon-in-possession statute is constitutional, and there is "no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)." *United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023), *petition for reh'g filed*, No. 22-2870 (8th Cir. July 14, 2023). There is thus no plain error in applying the statute to Dunn. *See also United States v. Voelz*, 66 F.4th 1155, 1164 (8th Cir. 2023).

## D.

Dunn raises two challenges to his sentence as an armed career criminal under 18 U.S.C. § 924(e)(1). First, he asserts that he did not have three prior convictions

for a "violent felony." He acknowledges two such convictions, but disputes the district court's conclusion that his conviction for third-degree assault in 2008 in Minnesota also counted. Dunn argues that the assault was an "act of juvenile delinquency" under § 924(e), because he committed the offense as a juvenile.

The record shows, however, that Dunn was convicted of third-degree assault in Minnesota state court as an adult. An adult conviction for a violent felony is not an "act of juvenile delinquency," even if the offender committed the offense while under the age of eighteen. *United States v. Ronning*, 6 F.4th 851, 854 (8th Cir. 2021). The district court thus did not err in concluding that Dunn's conviction for third-degree assault was a violent felony under § 924(e).

Dunn argues for the first time on appeal that the district court erred by finding without a jury that his three violent felonies were "committed on occasions different from one another." Under circuit precedent, however, the Sixth Amendment does not preclude a sentencing judge from determining whether offenses were committed on "different occasions," so there was no plain error. *United States v. Robinson*, 43 F.4th 892, 896 (8th Cir. 2022); *United States v. Harris*, 794 F.3d 885, 887 (8th Cir. 2015); *United States v. Evans*, 738 F.3d 935, 936 (8th Cir. 2014) (per curiam).

Even if there were error, Dunn could not show prejudice. Dunn did not object to information in the presentence report that he committed a third-degree assault in December 2007 on a city bus, a robbery in August 2009, and a second-degree assault in 2012. Those facts are thus admitted. *United States v. Menteer*, 408 F.3d 445, 446 (8th Cir. 2005) (per curiam). A single factor, especially of time or place, can decisively differentiate occasions. *Wooden v. United States*, 142 S. Ct. 1063, 1071 (2022). Even if a jury finding were required, there is no reasonable probability that a jury would have found that any of these three prior offenses from different years were committed on the same occasion. There is no plain error warranting relief.

\* \* \*

The judgment of the district court is affirmed.

_____